**KAZEROUNI LAW GROUP, APC**
Gustavo Ponce, Esq.
Nevada Bar No. 15084
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
E-mail: gustavo@kazlg.com

**PARKER COLE, P.C.**
Michael R. Parker (*Pro Hac Vice* Application To Be Filed)
e-Mail: michael@parkercolelaw.com
Kevin Cole (*Pro Hac Vice* Application To Be Filed)
e-Mail: kevin@parkercolelaw.com
6700 Fallbrook Ave, Suite 207
West Hills, CA 91307
Telephone: (818) 292-8800
Facsimile:  (818) 292-8337

*Attorneys for Plaintiff,*
Abigail Ortiz

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ABIGAIL ORTIZ, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAC LLC d/b/a SAPPHIRE GENTLEMEN'S CLUB; and DOES 1 to 10,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, *ET SEQ*. ("TCPA")**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abigail Ortiz, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this Complaint, after a reasonable opportunity for discovery.

# INTRODUCTION

1. Plaintiff ABIGAIL ORTIZ ("Plaintiff") brings this class action for legal and equitable relief based on SHAC LLC d/b/a SAPPHIRE GENTLEMEN'S CLUB and DOES 1 to 10 (collectively as "Defendants") illegal actions in negligently, knowingly, and/or willfully transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular telephone and to the cellular telephones of numerous other individuals across the country, without prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. Upon information and belief, Defendants sent random automated text messages to cellphone users like Plaintiff without their prior express written consent in order to solicit their business. This is exactly what the TCPA was designed to prevent. *See*, *e.g.*, *Mims v. Arrow Fin Servs., LLC*, 565 U.S. 368, 370-71 (2012) ("Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.").

3. Worse, Defendants sent these text messages even though Defendants knew the TCPA prohibited them from doing so. Defendants have previously been sued for violating the TCPA for sending similar text message solicitations. *See*, *e.g.*, *Luna v. Shac, LLC*, 122 F.Supp.3d 936, 937, 940-42 (N.D. Cal. 2015) (plaintiff alleged that Defendants sent promotional text messages to their customers; the court granted summary judgment in Defendants' favor based on a pre-*Marks*[1] definition of what constitutes an automatic telephone dialing system ("ATDS"); the class was never certified).

---

[1] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

- 2 -
CLASS ACTION COMPLAINT

4. Plaintiff brings this class action seeking damages, injunctive relieve, and any other available legal or equitable remedies, for herself and all others similarly situated.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

5. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, among other things, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

6. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

7. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints

received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message).

10. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[2]

11. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

12. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or

---

[2] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

13. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

14. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## JURISDICTION AND VENUE

15. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. §§ 227, *et seq*.

16. Because Defendants conduct business within the State of Nevada, personal jurisdiction is established.

17. Venue is proper in the District of Nevada because a substantial part of the actions giving rise to this action occurred within this judicial district, Defendants reside within this district, and the harm to Plaintiff occurred within this judicial district.

## PARTIES

18. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a citizen and resident of Las Vegas, Nevada.

19. Defendant SHAC LLC d/b/a Sapphire Gentlemen's Club is a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in Las Vegas, Nevada.

20. Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of SHAC LLC d/b/a Sapphire Gentlemen's Club, and/or parties otherwise responsible for the actions and omissions alleged herein. At this time, Plaintiff does not know the true names and forms of Does 1 to 10 and therefore sues these Defendants by fictitious names. Plaintiff alleges that these Doe Defendants are responsible in some manner for the acts and omissions alleged herein and that these Doe Defendants caused Plaintiff's damages. Once the true identities and forms of these Doe Defendants are ascertained, Plaintiff will amend her Complaint accordingly.

21. Each of the Defendants named herein are, and at all material times were, the agents, subagents, servants, employees, representatives, and/or alter-egos of each other, and purported to act within the scope of such agency, service, employment or representation in performing the acts and omissions described herein.

22. Each of the Defendants named herein acted in concert with each of the other Defendants as co-conspirators, agents, representatives, employees or servants and are therefore jointly and severally liable for the claims set forth herein, unless otherwise alleged.

**FACTUAL ALLEGATIONS**

23. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as though fully stated herein.

24. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (720) ***-9071 (the "9071 Number"). The 9071 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

25. For over at least the past year, continuing through the present, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, numerous SMS or MMS text messages to the 9071 Number without Plaintiff's prior express written consent, examples of which are

depicted in the following screenshots, which were extracted from Plaintiff's cellular device:




26. The source of the unsolicited text messages Defendants transmitted to Plaintiff was SMS short code 313-131, which is a telephone number leased by Defendants or Defendants' agent(s) or affiliate(s) and is used for operating Defendants' text message marketing program.

27. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever Plaintiff receives a text message, the unsolicited text messages that Defendants transmitted to Plaintiff's cellular device were invasive and intruded upon her seclusion. Plaintiff became distracted and aggravated as a result of receiving Defendants' unsolicited text messages.

28. All telephone contact by Defendants or affiliates, subsidiaries, or agents of Defendants to Plaintiff's 9071 Number and to the numbers of the members of the Class defined below occurred using an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(b)(1)(A) and *Marks*, 904 F.3d at 1053.

29. The aforementioned unsolicited text messages were impersonal form texts sent to numerous persons *en masse*, and not solely to Plaintiff, which is indicative of the use of an ATDS.

30. Defendants transmitted their text messages to the 9071 Number and to the numbers of the members of the Class defined below using an ATDS because they sent their text messages using equipment which has the capacity to store numbers to be called or to produce numbers to be called, using a random or sequential number generator, and to dial such numbers automatically (even if the system must be turned on or triggered by a person). *Id.*

31. The complained of SMS and/or MMS text messages sent by Defendants to the 9071 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendants sent their messages in order to advertise and market their goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class Members for commercial profit.

32. The unsolicited text messages Defendants sent to Plaintiffs and similarly situated members of the Class defined below were sent pursuant to a common telemarketing scheme for which Defendants, or any agent or intermediary acting on their behalf, did not obtain prior express consent from Plaintiffs and the Class, and therefore violated, the telephone solicitation restrictions in 47 C.F.R. § 64.1200(f).

33. Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendants or any affiliate, subsidiary, or agent of Defendants to permit them to transmit text messages to the 9071 Number or to any of

the Class Members' telephone numbers using an ATDS within the meaning of 47 U.S.C. § 227(b)(1)(A) and *Marks*, 904 F.3d at 1053.

## STANDING

34. Plaintiff has standing under Article III of the Constitution for Plaintiff's claims because (i) Plaintiff properly alleges injuries in fact, (ii) which are traceable to Defendants' unlawful acts, and (iii) are likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

### *Injury in Fact*

35. Plaintiff's injury must be sufficiently "concrete" and "particularized" to satisfy the requirements of Article III. *Id.* at 1547.

36. For an injury to be concrete, it must be "*de facto*," that is, it must actually exist. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). Here, Plaintiff has suffered a concrete injury has Defendants sent multiple unsolicited text message solicitations to Plaintiff's cellular telephone using an ATDS. Those text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

37. An injury is "particularized," if it affects the plaintiff in a personal and individual way. *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiff's injury is particularized as Defendants invaded Plaintiff's privacy by sending multiple unsolicited text message solicitations to her cellular telephone using an ATDS. Plaintiff became distracted, annoyed, and aggravated each time she received Defendants' unsolicited text messages. All of these injuries are particularized and specific to Plaintiff, and are the same injuries suffered by each member of the putative Class.

### *Traceable to Defendants*

38. Plaintiff must have suffered an injury in fact that is traceable to Defendants. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

39. Defendants' text messages are directly and explicitly linked to them. The text messages Defendants sent to Plaintiff indicate they were sent from

Defendants. Each text message begins with "Sapphire LV," which, upon information and belief, is a reference to one of Defendants' Las Vegas-based nightclubs. In addition, each text message references some form of entertainment, which is Defendants' main line of business. Defendants' text messages are the sole source of Plaintiff's and the Class Members' injuries.

### *Redressable by Judicial Order*

40. Plaintiff must have suffered an injury in fact that is redressable by judicial order. *Id.*

41. Plaintiff's Prayer for Relief includes a request for damages for the text messages Defendants sent, as authorized by statute. *See* 47 U.S.C. § 227(b)(3). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the Class Members.

### **CLASS ALLEGATIONS**

42. Plaintiff brings this class action on behalf of herself individually and on behalf of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23 (the "Class"). The Class which Plaintiff is a member of and seeks to represent is comprised of and defined as follows:

> All persons within the United States to whom, within four (4) years prior to the filing of this action, one or more text message(s) promoting Defendants' goods or services was sent by Defendants or an affiliate, subsidiary, or agent of Defendants, utilizing an automatic telephone dialing system, without prior express written consent to be sent such text message(s).

43. Defendants, their employees, and agents are excluded from the Class.

44. Plaintiff reserves the right to modify or expand the definition of the Class (or add one or more subclasses) as warranted as facts are learned or confirmed after further investigation and discovery.

45. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendants or their affiliates or subsidiaries Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted

Plaintiff and the Class members via their cellular telephones by sending unsolicited text message/s, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and the Class members. Plaintiff and the Class members were damaged thereby.

46. This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiff and the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

47. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

48. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

49. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

50. <u>Typicality</u>. Plaintiff is a person who received at least one unsolicited text message from Defendants without providing her "prior express written consent" to be sent such messages from Defendants within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent. Plaintiff and all members of the Class

have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

51. <u>Adequacy</u>.  As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of the Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave to amend this Class Action Complaint, amend the Class definition, to add additional Class representatives, or assert additional claims.

52. <u>Competency of Class Counsel</u>.  Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Plaintiff's counsel is experienced in handling complex class action claims as well as claims involving violations of the Telephone Consumer Protection Act.

53. <u>Commonality and Predominance</u>.   There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any Class Member, include (but are not limited to) the following:

    a) Whether Defendants or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class Members' cellular telephones;

    b) Whether such text messages were sent using an "automatic telephone dialing system";

    c) Whether Defendants or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained "prior express written consent" (as defined by 47 C.F.R.

64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether Defendants' conduct was knowing and/or willful;

e) Whether Defendants or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

54. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular

telephone providers. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

55. Additionally, the prosecution of separate actions by individual Class Members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

56. Moreover, Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. The violations complained of herein are substantially likely to continue without remedy in the future and Defendant will likely continue such illegal conduct an injunction is not entered.

57. Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

58. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

59. The foregoing acts and omissions constitute numerous and multiple negligent violations of the TCPA by Defendants, including but not limited to violations of each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

60. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

61. As a result of Defendants' negligent violations of the TCPA, Plaintiff the Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

63. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

64. The foregoing acts and omissions constitute numerous and multiple knowing and/or willful violations of the TCPA by Defendants, including but not limited to violations of each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*.

65. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

66. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff the Class members are also entitled to, and do seek, an award of treble damages as provided by statute, of $1,500.00 in statutory damages for each violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C).

67. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

//
//
//

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Abigail Ortiz prays for relief and judgment in favor of herself and the Class as follows against Defendants:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any Subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;
- An Order declaring Defendants' conduct, as alleged above, was in violation of the TCPA;
- Injunctive relief requiring Defendant to cease all unsolicited text messaging activity to Plaintiff and the Class and prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system ("ATDS") without obtaining the recipient's prior express consent to receive such telephonic communications via the use of such equipment in the future;
- Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member the Class for each and every one of Defendants' violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and
- Any other relief the Court may deem just and proper.

//
//
//
//
//
//

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED this 31st day of March 2020.

                                        Respectfully submitted,

                                        **KAZEROUNI LAW GROUP, APC**

By:   /s/Gustavo Ponce
       Gustavo Ponce, Esq.
       6069 S. Fort Apache Road, Suite 100
       Las Vegas, Nevada 89148

       PARKER COLE, P.C.
       Michael R. Parker (*Pro Hac Vice* Application To Be Filed)
       e-Mail: michael@parkercolelaw.com
       Kevin Cole (*Pro Hac Vice* Application To Be Filed)
       e-Mail: kevin@parkercolelaw.com
       6700 Fallbrook Ave, Suite 207
       West Hills, CA 91307
       Telephone: (818) 292-8800
       Facsimile:  (818) 292-8337

*Attorneys for Plaintiff Abigail Ortiz and the Putative Class*