UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ABIGAIL ORTIZ, individually and on behalf of herself and all others similarly situated,

          Plaintiff,

  vs.

SHAC LLC d/b/a SAPPHIRE GENTLEMEN'S CLUB,

          Defendant.

Case No.: 2:20-cv-00621-GMN-BNW

**ORDER**

      Pending before the Court is Defendant SHAC LLC d/b/a Sapphire Gentlemen's Club's ("Defendant's") Motion to Compel Arbitration and Stay Case, (ECF Nos. 31, 33). Plaintiff Abigail Ortiz ("Plaintiff") filed a Response, (ECF No. 37), and an Errata, (ECF No. 39). Defendant filed a Reply, (ECF No. 41).

      Also pending before the Court is Defendant's Motion to Dismiss and Stay Case, (ECF Nos. 35–36). Plaintiff filed a Response, (ECF No. 40), and Defendant filed a Reply, (ECF No. 43).

      For the reasons discussed below, the Court **GRANTS** the Motion to Compel Arbitration and Stay Case and **DENIES without prejudice as moot** the Motion to Dismiss and Stay Case.

**I.    BACKGROUND**

      This case arises from Defendant allegedly having sent automated text messages to Plaintiff and other similarly situated persons' cellphones without their prior express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA"). (Compl. ¶¶ 1–3, 23–33, 58–67, ECF No. 1). Defendant is an adult cabaret that previously employed Plaintiff as a performer. (*See id.* ¶ 19). Plaintiff alleges that Defendant negligently, knowingly, and/or willfully transmitted unsolicited, autodialed SMS or MMS text messages, *en*

*masse*, to Plaintiff's cell phone and to the cell phones of numerous other individuals across the country by using an automatic telephone dialing system. (*Id.* ¶¶ 1–3, 23–33, 58–67).

On July 8, 2020, Defendant moved to dismiss the Complaint, arguing that Plaintiff had previously signed an arbitration agreement encompassing the claim, which deprived this Court of subject matter jurisdiction. (*See generally* First. Mot. Dismiss, ECF No. 11). The Court denied the Motion, explaining that even if the arbitration agreement encompassed Plaintiff's claim, the Court had subject matter jurisdiction over the case, and the Motion was not properly the subject of Federal Rule of Civil Procedure 12(b)(1). (*See* Order, ECF No. 30). Defendant now moves to compel arbitration and stay the case. (*See* Mot. Compel and Stay ("Mot Compel."), ECF No. 31, 33).

## II.  LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10. Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek a court order to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v.*

*Byrd*, 470 U.S. 213, 218 (1985).  Generally, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013).  If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III.  DISCUSSION

Defendant argues that the Court is bound to compel arbitration of the instant dispute. (Mot. Compel 5:20–23, ECF No. 31).  It contends that the arbitration agreement encompasses all disputes between the parties, and the agreement expressly survives the termination of the employment relationship between the parties. (*Id.* 4:1–8); (*see also* Independent Contractor and Lease Agreement § 11(A), (F), (H), Ex. A to Mot. Compel, ECF No. 31-1).  Defendant also notes that the Arbitration Agreement expressly delegates issues of arbitrability to the arbitrator, so any issues of the Arbitration Agreement's validity or enforceability are not for the Court to decide. (*Id.* 4:27–5:19); (*see also* Independent Contractor and lease Agreement § 11(D)).

Plaintiff's arguments concern the arbitrability of this dispute, but not the threshold question of who may decide issues of arbitrability.  Plaintiff contends that this dispute arises outside the scope of the Agreement because the Agreement covers Plaintiff's employment with Defendant, but not her receipt of automated text messages from Defendant. (Resp. Mot. Compel 3:16–4:2, ECF No. 37-1).  Plaintiff also argues that the Arbitration Agreement is no longer in effect because she previously terminated the contract containing the agreement. (*Id.* 4:3–8, 5:9–8); (*see also* Ortiz Decl. ¶¶ 3, 6, Ex. 1 to Resp. Mot. Compel, ECF No. 37-1).  Even

if the agreement remains in effect on its own terms, she argues that the agreement is invalid. (*Id.* 7:3–8:16).[1]

While arbitration provisions are typically enforceable, Courts may invalidate them through "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, where the arbitration agreement contains a "delegation clause," threshold questions of arbitrability generally decided by courts become the province of the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide . . . .'"). In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court considered "whether, under the Federal Arbitration Act . . . a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." 561 U.S. 63, 65 (2010). The Supreme Court held that, unless such a delegation clause itself is challenged, the Court should defer resolution of gateway arbitrability questions to the arbitrator. *See id.* at 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement that the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Plaintiff's Response concerns the arbitrability of the present dispute, but not the proper tribunal to adjudicate issues of arbitrability. While the Court is not assured of the Arbitration Agreement's validity or whether the Agreement temporally remains in effect, those are not issues for the Court to decide. The parties' Arbitration Agreement expressly delegates issues of arbitrability for the arbitrator. (Independent Contractor and Lease Agreement § 11(D)) ("The arbitrator shall have exclusive authority to resolve any and all disputes over the validity of any

---

[1] Plaintiff also argues that she may revoke any consent she gave to receive text messages under the TCPA, but the argument goes to the viability of Plaintiff's cause of action, not whether she is bound to litigate the dispute in arbitration. (*See* Resp. Mot. Compel 4:9–17, 6:9–7:2).

part of this lease, including the arbitrability of any issue . . . ."). Determining whether the present dispute arises out of the parties' Agreement or if the Agreement remains in effect are issues of arbitrability. *See Nolde Bros v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977) (noting, despite cessation of the employer-employee relationship, that the employment contract's delegation clause reserved determination of the contract's validity for the arbitrator); *Momot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) (reversing district court's determination that the claims were not subject to arbitration when the parties' agreement contained a delegation clause reserving issues of arbitrability for the arbitrator). While Plaintiff has previewed her defenses to the Arbitration Agreement's enforcement, she has not explained why the defenses are for the Court to decide rather than the arbitrator. Nor has she raised specific defenses to the validity of the delegation clause. Accordingly, the Court grants Defendant's Motion to Compel.

//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 31), is **GRANTED**.

**IT IS FURTHER ORDRED** that Defendant's Motion to Stay Case, (ECF No. 33), is **GRANTED**. The case shall be stayed pending arbitration.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 35), is **DENIED without prejudice as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Case, (ECF No. 36), is **DENIED without prejudice as moot**.

**IT IS FURTHER ORDERED** that every ninety (90) days, beginning September 10, 2021, the parties shall submit a joint status report regarding the status of arbitration.

Dated this  11  day of June, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT